Thank you. You may be seated. When you're ready, Mr. Chairman. Hey Police Court, Judge Gregory, Judge Wynn, Judge Harris, Joe Sherman on behalf of 0.32 Acres, and Ms. Grace Minor Terry who's with me in the courtroom this morning. I accepted Jesus Christ as my Lord and Savior at the same time I started practicing condemnation law. They're both mysteries. And I think that when you explain either one, either your faith or how condemnation is supposed to work, you've got to hold that to be true, that it's a mystery. This is two hypothetical transactions. Before condemnation, what was it worth considering everything that the market would consider and not considering the project at all? And then a second hypothetical transaction, what would the market pay for the property knowing everything that a knowledgeable buyer would want to know about the project? And so practicing condemnation law for 13 years, I understand the questions from the bench from the last panel because it's complicated. And unless we appreciate that it's a mystery, it can be very hard to sort out. And that's why the jury function is sacred and critical because they're from the community. They use their common sense. They understand what matters and doesn't matter in their sub-market as to value of real estate. They're very good at perceiving what's useful to evaluating the credibility of competing expert opinions. I've been on both sides with large verdicts, with zero dollar verdicts, with middle verdicts. I've seen it all. And so helpful to the disposition of this case in particular is the order of operations. The appraiser for the landowner submits an appraisal report, does multiple site inspections. That's in the report. Has been to the property, has interviewed the brokers for the transactions that he relies on to represent sales of the property before condemnation, sales of the property after condemnation. And then the pipeline company hires a rebuttal expert to specifically critique the report. It says so in the scope of work on page 86 of the appendix. That's in evidence as support of their motion. So help me out. You heard my questions in the previous one, but initially the trial court makes a 702 determination which deals with liability. Right. It's a gatekeeper. Does the report come in? It seemed to me the next step would be 71.1 under this particular statute dealing with domain, with eminent domain, 71.1H. It says the trial court is the trial factor for everything except just compensation. Right. Reynolds recognized the trial court completed 71.1 with summary judgment. But even in that order here where we lie now, it seems logical that it could go from 702, which is to say it's a gatekeeping. The trial court then has the authority to look at that report and make 71.1 determinations, then can have a summary judgment if there's nothing else on the other side.  And that sounds logical. In your instance, so the question then becomes is there something to create a disputed fact to get this case on just compensation only to the jury? Right. And the way in which that would happen would be to examine do you have evidence. Of course, your argument is the brutal report comes in. Right. But it seems to me, I'm going to go straight to where I'm going on this, that the exclusion of a landowner testimony is a whole different ballgame.  History and everything says a landowner can get up, not speculate, talk about value of land and stuff. So why don't you go there? Because that sounds like to me there's some meat there. I want to hear the other side too, that you can't just exclude a landowner's testimony because they say I looked at the comparative sales and that kind of thing. Landowners are not experts.  And pretty much we've allowed landowners to come in and testify. And if that landowner testifies, that potentially could create a disputed fact. What you want to do is get this before the jury. Right. I got that. But it only gets there on just compensation. It doesn't get on anything else. Right. And so mixing it all together I don't think appreciates the mystery and conflating I think doesn't help either. I think you're right that the landowner testimony has to come in. The landowner knows the land better than anybody. I'm not making a determination that it has to come in. That's your statement. I'm just saying that it looks like to me there's something there. And that's what I want you to discuss. Why you say it has to come in. And the standard for landowner testimony revolves around is it from personal experience and knowledge of the property. Ms. Terry has owned the property longer than anybody. She's a seventh generation owner. She's known the property her whole life. She took the time when there was a wind energy project coming through the Roanoke Valley 20 years ago to encumber it with a conservation easement. She went through the steps necessary to herself intentionally diminish the value of the property. And that conservation easement is extremely restrictive and reduces 560 acres to one home site, a single home site. And so she knows the property intimately. She has experience devaluing it. She intervened at FERC. She participated heavily with the regulatory docket in order to try to prevent them from taking this access road to pull heavy machinery and equipment up the side of a mountain. This is the highest point of Roanoke County. And so all of that personal experience informs her opinion that the property will lose significant value. Can I ask you a question about the landowner testimony? You said she's testifying from personal experience. And I did think, see if you can help me work this through. It did seem odd to me to fault the landowner when she does the comparative sale analysis for sort of not explaining why. I guess I can't even remember now whether permanent easement was similar to a temporary one. She didn't do a good enough job on her comparative sales analysis. But it did seem to me that maybe the right way to think about that question is whether a lay witness should be permitted to give what sort of effectively expert testimony. Like why would a lay witness be allowed to testify as to this very complicated comparative sales method? And maybe if she can't lay a foundation, she can't. However, if she can say, look, I've lived on the mountain my whole life. I know that the Brokaws sold their land on the mountain. And I know that Ms. Monturi personally, I know she sold her land on the mountain. If she's got personal experience of transactions on the mountain that are approximate to her condemnation, then it's within her personal knowledge. If she can't lay that foundation, she's not allowed to. Well, then maybe she should explain. Then maybe she should explain why they are comparable. And I think that's what the biggest problem with this order of operations is that we disclose opinions. They nitpick them through a rebuttal expert. And then it turns into a 702 nitpicking session instead of a methodology. The cases that have gone very well, including prior to my involvement, 2007, this court evaluated an appeal from the East Tennessee Natural Gas Project. And in that case, also similar to the cases that have gone well at the district court, the district court held sort of a separate hearing on whether or not she was screening the testimony before it came in. And so when that doesn't happen, when that doesn't occur, then you're ruling from your desktop, you're ruling from these briefs with really material facts in dispute that do go to valuation. Because whether or not this sale is comparable or not is a data point about compensation. Whether or not this sale occurred before or after condemnation is relevant to just compensation. One way or the other, it proves the case. And so I think that as long as Ms. Terry testifies from her personal experience and says, I know Ms. Monturi, I know I looked up the sale, it sold for that amount, and I know the sale, I have personal knowledge that there's an adjoining track that sold, as long as it comes in from her personal experience and knowledge, then I think that is justified. As long as she testifies on her own special knowledge of her own land, she's okay.  But I would also think that it's probably true that she cannot testify as to the opinions of others. She can't testify based upon an expert opinion, which to some extent she does do that here. She has experts here. So that part about it, she can't do that. Do you agree? But it must be based on her specialized knowledge of her own land. The district court in this took the whole docket of all these cases on herself. And at the beginning of the project, there were some very well-reasoned opinions. The 1.23 acres was an opinion she issued at the district court level about landowner testimony. And I thought it did very well to say that if you are a landowner, it's appropriate to seek out information related to your property. It's appropriate to read those appraisal reports. Why wouldn't you? If you wanted to be educated about your own land, you would. You can't regurgitate them as if they're your own opinion. However, you're allowed to consider them the same way you would consider anything else that is available to you as the owner of the land. And so in that opinion, she said, look, I personally, as to landowner testimony, don't find it credible. However, it's an issue for the jury because it's up to them to determine credibility. And that's what I think is the ultimate issue in this case is that credibility determinations do go to the jury. It's not a true Dahlberg function when there's three ways to value property. The cost method of replacing improvements that are there, it's usually done for churches or special use properties that aren't easily traded and sold. You can do the income approach if it's an income stream and an investor wants to capitalize an income stream. Or you do the most common and the most reliable method, which is the sales comparison approach. And so that's what Mr. Gruel has done in this case. He found three large acreage tracts that supported a single home site on the before. He evaluated the property. He said, look, there's only a couple places you can put this home site based on the restrictions of the easement and the topography. And knowing that folks who were going to spend a million dollars to build new on 500 acres at the top of a mountain would want a good view, would want the choice real estate from that investment. And then evaluating the project that puts a heavy industrial road through it, folks with a million dollars have a choice. They don't have to buy on this ridgeline. And they may go further up the Blue Ridge Mountain. They may go to Tennessee. They may go to another state. And so he said in the after condition, I don't think someone is going to pay the premium for the single home site that is now adjacent to a heavy industrial road and which cuts a scar through the view shed. So after a condition, he found three comparable sales that are large acreage and don't have the same major value for a premium rural residential million dollar view. And so he's done the most reliable method of sales comparison on the before and then sales comparison on the after. They don't like the conclusion, so they nitpick it every step of the way. And what's happened is they've hired an appraiser to nitpick it. They've regurgitated his nitpicking. And then the district courts adopted it as their own. If you look at the citations in the joint appendix of his nitpicking report and then her opinion, they're almost mirror images. It's not a true methodology problem. There's no mention to the problem with the methodology. He's used the most reliable methodology of all, which is comparison sales on the before, comparison sales on the after. And what they're asking the district court judge to do, which is inappropriate, is weigh the evidence and weigh whether or not he should have considered more about Honeysuckle Road, which he did acknowledge in his report four times, 98 of 100, 103, 118, all of the joint appendix. And he'd been to the property. He'd met with the landowner. He knew that that road doesn't go anywhere. If you look it up on the VDOT website, which puts the traffic counts for every road in the whole state, it's not on there because it's at the top of a mountain with no destination. It's dead ends at the police tower, and the rest of it is her property. Whether it goes somewhere or not, who makes that determination? Well, I think it goes to value. Is it the judge or is it the juror? I think it goes to value. I think she's got to let it in because it's done properly methodically. It was done with sales on the before. That's where it gets confusing. I understand. It's a mystery. But it can be simplified because you've got a good rule there. You follow that line of reasoning that 702 says whether or not you can get an expert in. 71.1 allows the judge to decide non-issues that deal with just compensation. And the basis of it, a question of whether this road goes on where or not, seems to be a 71.1 determination. Ultimately, if it gets to the jury, it will be because you've got some evidence in terms of what you say the value is. There's evidence in the other value of it. That's a disputed fact. Jury will determine which one to go with. If you don't present evidence, in other words, if Terry's testimony is excluded and if Brutal's report is out, judge goes to a 71.1 analysis, determines that there is evidence to support this report here for the value, there's nothing to send to the jury because that's all you've got. So that summary judgment would be property. But in your instance, what you say is you're entitled to have a rule report and this testimony creates an issue of fact for a jury to decide, I guess, primarily the amount. In these cases, the jury comes back with an amount. Does it make independent findings? May I answer? Answer that. It comes back with an amount, right? Right. Not independent findings. So that's where I'm going with this. So you've got to get to the jury an issue that puts different amounts to the jury. Right. Jury doesn't go back and say, honeysuckle world in here, whatever. It may decide, well, as you say, that weighs. But the weight and admissibility of it comes from the 71.1. Is that correct? I think the weight comes in through 702, and I think that's the true challenge here is whether or not he properly weighed. 702 is a gatekeeper, and that's evidentiary. I agree. We're only getting it in. 71.1 is your weight and admissibility side of it in terms of whether, not admissibility, weight in terms of whether it supports the findings for the conclusion. I think 71.1 says trier of fact for things other than compensation. And so I think it's meant to avoid that special verdict form where you say, is this road on the property? Right. It's meant to avoid extra questions other than just amounts in the verdict form. And so I don't think that's what this is here on honeysuckle. No one's disputing the honeysuckles on there. He mentioned it in his report four times. They're saying, well, he didn't properly weigh it. And that's why we said, well, if you want him to put a sentence in the report that says if he did properly weigh it because it doesn't go anywhere, we'd be happy to do that. And I think that's why it's got to go through the gate to the jury for them to weigh it because otherwise there's a credibility determination, there's a weighing of evidence, which is not a true methodical problem. There's not a problem with this comparable sales other than what the rebuttal expert has said. And she's regurgitated without any independent knowledge of her own. So it's really a credibility contest between the experts. And I'll reserve the rest of my argument unless you've got questions at this point. Thank you, Mr. Chairman. Mr. Massey. Thank you, Judge. May it please the court. Wade Massey for Mountain Valley Pipeline. Just to put this case in context, this is a 558 acre mountain track. The value, the highest value on it was about $1,800 an acre. It's subject to a conservation easement pre-existing. It can't be subdivided. Only one house can ever be built on it. The easement in this case is not a pipeline easement. It's for an excess road. The excess road is .235 acres. Two-tenths of an acre in the far northern corner of the property. And the claim is that that easement devalues the entire 558 acres by 30-35%. And the demand is $300,000 for the excess road. Now, in support of that, there were two pieces of evidence. One was an appraiser. And one was the opinion of the landowner. The appraiser was excluded. 702. His testimony went out for a number of fundamental reasons. Number one, he didn't understand what the easement was. He called it 40 feet permanent easement. It's actually half of that. Second, he didn't recognize that there was an existing road at this same location. Now, you can say it was an old road. It was a logging road. It wasn't used very much, but there was an existing road there, which he ignored. There's a picture of it, a description of it, at Joint Appendix 955. Actually, an old picture of it in 2007 at Joint Appendix 670. Third, he says this road, this small private road, diminishes the value of the property by this large margin, but he ignores the fact that there are other roads on the property. There's a public road on the property that he doesn't even account for in any diminution. And then fourth, he alleged damages to this track from the loss of view vistas. That was the issue you've seen here. And the mention was made earlier of the Campbell case. And the Campbell case, of course, is U.S. Supreme Court law for 100 years that you can't impact one track from what's happening on another track that you don't own, which is exactly what this appraiser was trying to do in his report. So what we have here, and I think you're right, the judge didn't make that determination under Rule 702. I think the problem in the Reynolds case sort of talked about the completion of summary judgment in 71.1. Here it looks like a completion of 702 in 71.1. And the more I begin to think about it, it's like, so what? Because it's not a jury situation normally where you would have a 702 determination where a judge would do this. And it is going beyond determining just reliability and admissibility. He's actually going into a factual analysis of whether it supports it in 702. He can do so under 71.1, it seems to me. He just didn't call it that. And, you know, it's troublesome in terms of the – because when I look at Reynolds, you know, Reynolds says, well, if he had done this at 71.1 instead of the summary judgment, then boom, this could happen. But he is the jury on that issue. So it's not like a case where you have a jury that's going to determine these facts in non-immediate domain cases. This is immediate domain. But you would agree it's improper under 702 to do this. The question then, I don't know if you call it harmless or whatever, he can do it anyway under 71.1 is what you call it. And, I mean, you do these cases. So it seems like to me that would just be a neater way to do it is to do 702 and then say, okay, we're going to 71.1, do this, then do summary judgment, and then move it on. Doesn't that – I mean, to me, am I on par with that? You raise another way to get to the same result, I think. But the first way you can't get there, you can't do it under 702. That immediate domain does not change the federal rules of evidence. 702 is a gatekeeping rule. It deals with methodology and reliability. And getting a nitpicking of is that rule here and all that, that sort of thing. 702 is different. But 71.1, because that creates a jury question. But 71.1 gives a judge the jury function to do that. True. But 702 is a established rule with a set of procedures to be followed. And if the expert does not meet those requirements of that rule, the expert is excluded. So that expert goes out under 702. But it's methodology is what I'm saying. It's a gatekeeping. It's a Dahlberg thing. That's why in other cases you have 702, then you go to the merits of it. That expert, his opinion is not infallible there. You get to really go into the facts on it. That's what I'm saying. You don't get to do that on 702 because you wait until you get to the next stage of it to do it. If there's a stage. I don't want to use the word stage. I'm not trying to create some logic. But I think 701 then is the problem. It seems to me, though, at the end of the day, you can simply do it. And it's just a question of how do we get this procedurally into the right box so that we can get to what question? Was it a question that should have gone to the jury? And the only question that this appraiser or the only point that this appraiser had for the jury, the ultimate point, was the amount of just compensation. And that's what was excluded under 702. And the only other evidence on it was alluded to earlier was landowner opinion on 702. And the court excluded that as well. Under 701, lay opinion itself must have a rational basis, must have a valid foundation. It can't be wholly speculative. So there are standards there. They're not the same as expert standards, but they're recognized standards that this court has applied in previous cases. This court applied those standards in the coffee case a couple of years ago. So those are recognized as well. The judge excluded the testimony because at her deposition, Ms. Terry was asked what she based her opinion on. And she based it on other sales. And she said those were after sales, in other words, sales with an easement that she was relying on for her values. And those sales did take place. There are such sales. The problem is that they're not after sales. They're before sales. So if you're using an after sale that's really a before sale, it's hard to see how that leads to a loss in value. In any event, those sales that she relied on were not for an access road. They were for a pipeline, which is obviously a different use. The other point of evidence that she relied on was the conservation easement. And this was mentioned earlier, the appraisal for that conservation easement. So that appraisal for that conservation easement was made to determine the impact of the easement for tax purposes. And the appraisal said, well, if you encumber this entire 558 acres with this easement and you put on all these restrictions, no more building, no subdividing, it devalues at 30%. And the logic of the witness was, well, if that devalues me 30%, then I'm devalued by this pipeline road 30%. So that was the entire source of the testimony. And the court excluded. The only other point I'd like to make is one other standard of review that we really haven't talked about is, of course, we're not de novo here. We all have judgments. And if we were all district judges, we may decide these one way or another. But we're dealing with decisions that have been trusted to the district judge to make. And they're reviewed for abuse of discretion by the district judge. The test is not whether this court agrees or disagrees with each of those rulings, but whether the district judge made an informed decision, applied the right law. There's no legal error alleged anywhere against this judge. The admissibility of evidence, the admissibility of evidence is not a jury question. It's a judge question. And the judge didn't abuse her discretion on this. Has this court ever held that a landowner cannot rely upon the specialized knowledge of an expert? Yes. Give me that case. Coffee. Oh, that's the coffee case. It didn't go to oral argument. It was decided on the briefs. Was it a published opinion? I didn't look at that. It's Fed Index. I don't know if that means published. It came out during COVID. We don't publish opinions that are not argued. Okay. Well, this case did not reach argument. Give me one published. It tells us that where we've decided that a landowner cannot rely upon the specialized knowledge of an expert. Well, it would be certainly whatever we cited in our brief in coffee, because it seemed to work there. I didn't see anything in your brief that cited anything like that. There's some other circuits that dealt with it. I haven't found anything. Yeah, I do see the other circuits cited in this brief in particular, but I don't see other opinions of this court on that particular point. Not allowing the landowner's testimony is troubling, because the threshold for allowing landowner testimony is very low. And she can testify, I think you would agree, on her own special knowledge of the property. So when she gets in that diatribe about this access easement and how beautiful it was and the house that could be up there, and now how it's going to change now with the conservation, that's her knowledge. That's kind of her feelings about it. And common law and laws dealing with land says, we're going to let that landowner testify about that now. That's a different ballgame. So you would agree that part of a conversation, notwithstanding we haven't decided the expert evaluation, that's clearly something we let landowners do. That rule could be adopted, that a landowner can testify regardless of how much sense it makes or doesn't make. Well, it's not a question of how much sense. It's her special knowledge. She walks this land. She's on it. She sees what goes on it day to day. So she can testify about the gloriousness of her place and how this place is, how they hike on it and people travel on it. There's a landowner. This is her property now. And all she does is testify. Now, it doesn't mean that's the end of the game. But how do you exclude someone from talking about their land and you don't know anything about this land until you came to put a pipeline up there? No one else knows anything. She lives on it. And it's their land. And you know that, at least in this country still, land is pretty sacred. I come from a farm area and people think they can go down and buy land. You can't just buy people land. They won't sell it to you. That part of this case is really troubling when it comes down to her testimony, certain parts of it. And it got a little emotional in terms of what was going on. But the threshold for allowing that testimony is very low. I mean, it's a grass-to-the-level expert. And we've not decided whether she could, in doing that, rely upon some specialized testimony, some expert testimony. But even beyond that, she does testify about her view. So why is that not? I mean, it's there. Well, I think we're looking at maybe two different points. But one point is this is my land. I know what it's worth. I've lived here. I'm entitled to express my opinion on it. The second part of this, though, is also, well, what is an impact financially of an easement on this property that's never been dealt with before? And is that landowner permitted to give an unqualified opinion that guarantees you go to the jury, despite whatever else is in the record, just because she's the landowner? And does it have to have some foundation, some rational basis to get to that next step of a jury trial? The basis is I've got this beautiful piece of property here. And people come here, they hike, and it's a lovely place to be. You can build a home. But then you put this little pipeline easement up here, and all of a sudden it's not as glorious as it's going to be. There's an appeal to it. I mean, if I'm buying a piece of property, you tell me there's a conservation easement. The word conservation tells me there's something a lot more benign than a pipeline easement coming on the property. I might have a different view on it. And her feeling is, you know, she's talking about this property. I mean, I'm just saying it. It looks like to me that's the kind of stuff that you do let her test. I mean, that's called special knowledge. And it is her feeling. It might not make you feel good about it, but that's what I feel about my property. She wants the jury to know that's what I think about my property. I think the question is where does that line need to be drawn? The jury does it. The jury makes a determination of, well, you've got your report. This is what she says. We think it's worth this. That you don't want to have because you don't know what the jury will come up with. Well, that would guarantee a jury trial in every condemnation case. And none would ever be decided on summary judgment if a landowner's unqualified opinion, whether it was consistent with the facts or not. It's based on their specialized knowledge of having lived there. My law, I'm just saying, whether it does in every case or not, that I can see how a landowner's testimony in virtually every case, yeah, you want to hear what the landowner thinks about their case and what's going on here. It's some evidence of something. It was. And then the district judge, again, in the district judge's discretion, her best judgment drew a line on this testimony. And question for this court, is that an abuse of discretion under these facts that are presented here? And we submit that it's not in this case. I'm glad you used the word drawing a line. My question is, and you do this. I'm sure I'm speaking for myself, not my other two learned colleagues. They may know a whole lot more, but I'm sure you know more about it than I do. But it seemed like the record shows that the main problem was with the judge, the district court judge, was that the comparison that the expert made just seemed like not apples and oranges. One was an abused property that had a greater development value. Another was properties that were not under conservation trust. And so it's a line. At what point, in terms of drawing a line, does this become a matter of I give little weight to it, but I don't exclude it, versus no, this is such that it's not acceptable evidence because the comparables are too far flung? Can you help me with that? Where is that line drawn for the point that it becomes rightful summary judgment versus, well, it goes to a jury. But in other words, help me with that. How do you get that Euclidean, linear, like line for us in the appellate court to assess the district court? Well, I don't think we're riding on a blank slate here. I think we look at 701 and what it says. The testimony has to be rationally based. And does this have a rational basis? And the cases that have interpreted that says it has to have a valid foundation. It can't be completely speculative for it to come in. Is it speculative if you have a 500-some acre conservation trust? You could say, well, you know, whoever buys this property, 400 acres, they're going to build a monster house. It's going to be a million dollar home. I mean, how do you say that just because, you know, this has a conservation, in other words, you're saying that this is lower because it has this. I'm not sure of that. I know some property down by the Potomac. River on the other side of Virginia, well, it's worth a whole lot if you got a lot of acres and nobody can build on it but you. And somebody said, that's where I want to be. I'm going to build my $5 million home here because I know nobody else is going to be near me. How do you just discount that and say just because there's a conservation trust on it, I'm going to devalue it? That's my question to you. Well, I mean, it was our point, our argument. I know it was your argument, but yeah, I appreciate that. But I'm telling you, the judge cut them off from going further. How do you justify that with the judge? Your argument can't be that it was tested. It has to be some construing by the law to say as a matter of law, you don't go to a jury. Tell me that. It did not seem rational to us. And that was our argument to the district judge that it was not rational to compare a permanent easement on an existing road of 0.23 acres in one corner of the property to the impact determined by an expert. Not her. It wasn't her opinion. It was an expert appraisal opinion that she relied on for a conservation easement over 558 acres with all sorts of restrictions on it. So it didn't seem like those two could be connected in our argument, and I believe Judge Dillon accepted that. Well, the district court certainly accepted it, but if that's the case, we wouldn't have any appellate jurisdiction for these cases. Most of them are. That's why some people come as appellant and some come as appellee. And maybe District Judge Gregory would view that differently. I don't know. But this court looks at it. Is that an abuse of discretion? Judge Wynn defined an abuse of discretion as arbitrary and irrational. Is that opinion of Judge Dillon, excluding that evidence, arbitrary and irrational? And I would submit it's not. Or an error of law. Or an error of law. You don't have the discretion to commit error. Correct. Okay. Thank you. Thank you, Mr. Mazza. Mr. Sherman, you have some time reserved. Thank you. The last point that Your Honor made is, I think, well taken in that if the data was so obvious, if there was a stock of 560 acre tracts sold, approximate to this one, in the last five years, they wouldn't need us. There wouldn't be any need for a soft science. The data, it's very hard to replicate these hypothetical transactions. I'm sorry. Are we talking about the expert report or the landowner's testimony? The expert report relied on poor sales and the before. And I think it's noted. Can I ask you about the thing that the district court relied on this as well? And that did sort of jump out at me. Am I reading the expert report right when part of what is being considered is the damage to the view vista from the pipeline easement on a different piece of property? Well, yes. Okay. And how is that okay under Campbell? Campbell, the state law should control valuation issues. That's with the third. Oh, so Campbell doesn't apply. Well, I think that, no. I think that the state law, Virginia 25.1-230, says you've got to consider everything a buyer would consider. And I think if a buyer is buying a million dollar piece of property. And even if that is inconsistent with Campbell, then the state law should govern. That seems weird because this is a Fifth Amendment taking. It is weird. And the Third, Sixth, Fifth, and Tenth Circuits have all agreed. Every circuit that's looked at it has agreed that in Natural Gas Act cases, which this is, there's no federal interest in uniform law. The pipeline companies can pay state interest rates. I'm sorry. Have all of those circuits said Campbell doesn't apply in those circuits? No, they've said that the state law controls valuation issues. And so I made that point repeatedly to the trial court at 497 and 850 of the record. And Campbell, I don't think it's inconsistent with Campbell, if I can get there. Because Campbell. I just want to make sure I understand. But your first argument is that you argued to the district court that Campbell doesn't govern. And the district court disagreed. Right. Okay. Okay. And what's your second argument? And Campbell is a World War I case where they took a lot of land and they were using different parts of it for different things. And then this circuit distinguished it in West Virginia open paper to say that, you know, what happens on your land is what most matters. And that's what I think the appraiser is trying to caption here is that this is a unique, this is the highest point in Roanoke County. It's got commanding views. And for someone to pay a million dollars on the before to build new, they're probably not going to pay the same amount on the after. Is this like an argument for an exception to Campbell? I mean, the Campbell rule seems kind of bright line. I didn't notice that there was a view exception. No, I don't think that I'm arguing for an exception. I just think that the West Virginia open paper case from 1952 in this circuit tried to hold both truths, that the damage to this tract is the focus of the inquiry. We're not saying that the use of other tracts that have a pipeline easement on it, which would explode or people don't want to live near the pipeline. We're not saying that the use is what is diminishing this property. What's diminishing this property is the project that this road is necessary for. And that was the Ninth Circuit's exception was that when there's a. But you're not asking us to apply the Ninth Circuit exception. I'm asking for state law. I'm asking for the spirit of the law that the Fourth Circuit and open paper and the Ninth Circuit articulated as exception. And then I don't think Campbell is the controlling issue here. And I think that if the. It seems like it is because the gist of the report, as I understood it, and really much of your argument is like it's just a less attractive piece of property because of what's going on in the one over there, which blocks the view. Right. And so if the and I offer the trial court and you'll see in the transcript I offered, if you say if you want just limited to this property and the view from the project on this property, that's fine, too. No one's going to want to look at heavy industrial trucks coming up and down your your million dollar piece of property. So I know I. I'm open to anything. I don't think it's fatal to the analysis. The methodology is is for sales in the before because you have this great piece of property and then this incompatible use occurs and then the for sales in the after where you wouldn't pay the same premium. The person with a billion dollars got more options than than this one track. And so I just want to hit a couple of their arguments. You know, I mean, I think that's really what stood out to me is that these are their arguments. This is weighing. This is not a true methodology challenge. Can you just respond to your friend on the other side? The argument that if every landowner can testify as to his or her sort of personal experience walking the land, we are effectively saying there is no summary judgment and condemn condemnation proceedings. I think you've got to lay a foundation. I don't think you can say it's worth it. It's priceless to me. My grandma gave it to me. So it's worth a million dollars to me. I don't think that holds water. I think you've got to lay a foundation for in my personal experience. I've used it for these things. I know that I could sell it for these things because that's what it's zoned for. And I know that these other things sold on the mountain for this amount. So why wouldn't I market mine for the same amount? I think that there's a common sense element that as long as there's a proper foundation, it's appropriate for a landowner to testify to their own experience. It's a fundamental right to own land. And any law that impacts a fundamental right has got to be strict scrutiny, narrowly tailored to achieve the end. So I think that there are some cases, if I can just finish answering, that you wouldn't want folks to testify to purely speculative, I would build Disneyland here, grandma gave it to me, sentimental value. There's some clear pitfalls. However, if you're able to lay a foundation, in a rational basis this is the lowest level of scrutiny, and I think that's appropriate given this is a fundamental right for the landowner to own land. If you can lay a foundation for appropriate testimony, which in this case was I've known the land my whole life. I know what it's good for. I specifically restricted the uses from multiple home sites to a single home site. The market here likes views. That's what people buy, rural residential, they buy for privacy because living in the woods assumes privacy. And you want to have great views and a water feature. And you're putting an industrial road on the highest point. And, you know, there's, I think that there's a foundation for the testimony in this case. And based on her personal experience, diminishing its value by choice, I think she's able to testify to her opinion of how this further diminishes it And I know my time's expired. If I could just make one point about the record citation. Thank you, Your Honor. I think it's an error of law that she's deciding the facts in dispute without using a 71.1 hearing. If she wanted to have a hearing on whether or not this preexisting logging road existed, then the record would bear out it didn't. The record citation of 814 that they provided just moments ago refers to it as a trail. And that's what Ms. Grace Terry's testimony was in her deposition 199 to 200 of the record. It was a trail. It was logged 100 years ago. It's grown over. It wasn't passable by vehicle. And there was no deeded easement. That's at 616 of the record. They admit there's no recorded easement. There's no recorded instrument that allows anybody to get on this old logging road, which is really an overgrown trail. And so the idea that there's some sort of weight to the testimony I just don't think would bear out. And if she did hold a 71.1 hearing on any of these disputed facts, then I think that would be the proper way to do it. I think it is an error of law to resolve disputed facts in a 702 function. All right. Thank you, Mr. Sherman. Thank you. All right. Then, counsel, if you don't mind, we agree counsel in every case. And same counsel in the next case. So we're going to double shake your hand at the end of this one. All right.
judges: Roger L. Gregory, James Andrew Wynn, Pamela A. Harris